UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 24-029-DCR |
| V. | ) ) | |
| SAMUEL C. ATKINS, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Samuel Atkins is charged with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) (Count 1); possessing fluorofentanyl with the intent to distribute it (Count 2); possessing methamphetamine with the intent to distribute it (Count 3); distributing fluorofentanyl (Count 4); and possessing fluorofentanyl and fentanyl with the intent to distribute it (Count 5), all in violation of 21 U.S.C. § 841(a)(1). Atkins has filed a motion to dismiss Count 1, claiming that 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to him under the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *District of Columbia v. Heller*, 554 U.S. 570 (2008). The motion will be denied because charging Atkins under section 922(g)(1) is consistent with this Nation's historical tradition of disarming those it deems likely to endanger public safety.

**I.**

Officers with the United States Marshals Fugitive Task Force located Atkins at a residence in Madison County, Kentucky, on January 3, 2023, following the issuance of state

court warrants for his arrest.[1] [Record No. 27, p. 1] Officers located 16 firearms belonging to Atkins within the residence. Atkins had previously been convicted of multiple felonies, including possession of cocaine in Pike County Circuit Court (Case No. 00-CR-00031); possession of a controlled substance in the first-degree in Fayette County Circuit Court (Case No. 09-CR-00254); trafficking in a controlled substance in the first-degree in Pike County Circuit Court (Case No. 09-CR-00417); trafficking in a controlled substance in the second-degree, first offense (less than 20 dosage units), trafficking in a controlled substance in the first-degree, first offense (less than 10 dosage units), and being a persistent felony offender second-degree in Rowan County Circuit Court (Case No. 14-CR-00176); and possession of a controlled substance in the first-degree and tampering with physical evidence in Pike County Circuit Court (Case No. 17-CR-00017).

A federal grand jury returned an indictment on April 11, 2024, charging Atkins with the five counts alleged herein. Atkins has filed a motion to dismiss the felon-in-possession charge, arguing that prohibiting him from possessing firearms would violate the rights guaranteed to him under the Second Amendment to the United States Constitution.

**II.**

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Ordinarily, Rule 12(b)(1) motions "may appropriately raise for consideration such matters as former jeopardy, former conviction,

---

[1] These facts are taken from the United States' response to Atkins' motion to dismiss. [Record No. 27] Atkins did not object to the United States' inclusion of these facts and the Court relies on them only for purposes of addressing this motion.

former acquittal, statute of limitations, immunity [and] lack of jurisdiction." *United States v. Craft*, 105 F.3d 1123 (6th Cir. 1997). In resolving a motion to dismiss a charge under Rule 12(b)(1), the Court may "make preliminary findings of fact necessary to decide questions of law," but may not "invade the province of the jury." *Id.* Accordingly, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Shepherd*, 2024 WL 1251334, at *1 (E.D. Ky. Mar. 22, 2024) (quoting *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001)).

Facial challenges to the constitutionality of statutes are generally disfavored. *Women's Med. Prof. Corp. v. Voinovich*, 130 F.3d 187, 218 (6th Cir. 1997) (Boggs, J., dissenting) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Accordingly, the Court addresses the defendant's as-applied challenge first. *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327 (6th Cir. 2009) (en banc) (observing "the usual judicial practice is to address an as-applied challenge before a facial challenge"). If the statute is constitutional as applied to the defendant's activities, the Court need not address the facial challenge. *See id.*

### III.

The Second Amendment protects "the right of the people to keep and bear arms." U.S. CONST. amend. II. However, "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The United States Supreme Court has repeatedly approved "laws that prohibit dangerous persons, including felons and the mentally ill, from having arms." *Voisine v. United States*, 579 U.S. 686, 715 (2016) (Thomas, J., dissenting) (citing *Heller*, 554 U.S. at 626). *See also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010); *United States v. Rahimi*, 602 U.S.--, 2024 WL 3074728, at *9 (June 21, 2024) ("[W]e do not suggest that the Second Amendment prohibits the enactment of laws

banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse.")).

In *New York Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court announced a new standard for evaluating the validity of laws that restrict the right to keep and bear arms under the Second Amendment. It provides that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

Since *Bruen*, the Sixth Circuit has not answered the question of whether the blanket prohibition of firearm possession by felons is consistent with the Nation's historical tradition of firearm regulation. *See United States v. Johnson*, 95 F.4th 404, 416 (6th Cir. 2024) (citing *United States v. Bowers*, 2024 WL 366247 (6th Cir. January 31, 2024)). But various district courts, including judges within this district, have applied the *Bruen* test and determined that section 922(g)(1), as applied to dangerous felons like Atkins, is consistent with the Nation's historical tradition of firearm regulation. For example, in *United States v. Goins*, 647 F. Supp. 3d 538 (E.D. Ky. 2022), the defendant sought to dismiss his section 922(g)(1) charge, which was based on predicate felony convictions for driving under the influence, committing a DUI with a suspended license, possession of a controlled substance, and possession of marijuana. Following a lengthy discussion of historical laws, the court determined that section 922(g)(1), as applied to Goins, was consistent with historical regulations supporting Congress's power to disarm those it deems dangerous. *Id.* at 548-54.

The undersigned recently reached the same conclusion in *United States v. Wilkinson*, 2024 WL 1506825 (E.D. Ky. Apr. 8, 2024). Wilkinson had previous felony convictions for

drug trafficking and burglary. He asserted that his charge under section 922(g)(1) was unconstitutional as applied to him because there was no historical tradition of disarming citizens under analogous circumstances. 2024 WL 1506825, at *4-5. However, as the Court noted, there exists an "age-old notion that society can restrict access to firearms for those it deems likely to endanger public safety." *Id.* at *5. The English tradition of disarming groups perceived as threatening to public safety or the general peace informed early American arms laws. *Id.* at *6. For example, Catholics, slaves, and Native Americans were disarmed because they were thought to pose a risk to public safety and stability. *Id.* And while such practices obviously "have no place in modern America, they do represent a historic tradition of disarming groups that the legislature views as threatening public safety." *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting); *see also Goins*, 647 F. Supp. 3d at 553 (observing that "the common law understood that the sovereign could strip individuals of weapons if it deemed them violent or a threat to disturb the peace. The colonists inherited this understanding as well.").

Atkins suggests that the Court got it wrong in *Wilkinson* because the government has not "identified a well-established and representative historical analogue" to section 922(g)(1). [Record No. 20, p. 18] But *Bruen* does not require a "historical twin." 597 U.S. at 30. *See also Rahimi*, 2024 WL 3074728, at *10-11. Instead, "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 2024 WL 3074728, at *6. In considering whether a modern law is sufficiently analogous to a historical regulation, the Court must consider how and why the laws burden an individual's rights under the Second Amendment. *Id.* (citing *Bruen*, 597 U.S. at 29).

Notwithstanding Atkins' protestations to the contrary, "[s]erious drug offenses, like distribution or possession with intent to distribute, are inherently dangerous and often violent offenses that justify disarming those who commit them." *Wilkinson*, 2024 WL 1506825, at *7 (citing *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011)). *See also Smith v. United States*, 508 U.S. 223, 240 (1993) (observing that "drugs and guns are a dangerous combination"). Illegal drug trafficking is largely a modern crime with no direct historical analogue, so the analogue must only be "relevantly similar" to laws that tradition is understood to permit. *See United States v. Woznichak*, 2023 WL 7324442, at *6 (W.D. Penn. Nov. 7, 2023); *Rahimi*, 2024 WL 3074728, at *6.

"From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others. The act of 'go[ing] armed to terrify the King's subjects' was recognized at common law as a 'great offence.'" *Rahimi*, 2024 WL 3074728 , at *7 (quoting *Sir John Knight's Case*, 3 Mod. 117, 118, 87 Eng. Rep. 75, 76 (K.B. 1686)). And the "Militia Act of 1662, for example, authorized the King's agents to 'seize all arms in the custody or possession of any person . . . judge[d] dangerous to the Peace of the Kingdome." *Id.* (quoting 12 Car. 2 c. 3, § 13 (1662); J. Greenlee, The Historical Justification for Prohibiting Dangerous Persons From Possessing Arms, 20 Wyo. L. Rev. 249, 259 (2020)).

By the time of the Nation's founding, state constitutions and the Second Amendment had largely eliminated governmental authority to disarm political opponents, but "regulations targeting individuals who physically threatened others remained." *Id.* These included the "going armed" laws, which prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at *9 (quoting 4 Blackstone 149) (cleaned

up). Because such conduct disrupted the public order and usually led to actual violence, the law punished these acts with "forfeiture of the arms . . . and imprisonment." *Id.*

Consistent with these historical justifications, the overwhelming weight of authority indicates that *Bruen* is no barrier to a prosecution under section 922(g)(1) as applied to Atkins. *See United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (interpreting *Bruen* as permitting categorical disarmament of felons); *United States v. Robinson*, 2024 WL 2816025 (N.D. Ohio June 3, 2024) (collecting cases) (denying the defendant's as-applied challenge to § 922(g)(1) because drug trafficking is an inherently dangerous crime); *See United States v. Lucas*, 2024 WL 895317, at *3 (N.D. Ohio Mar. 1, 2024) (collecting cases); *United States v. Brooks*, 2023 WL 6880419 (E.D. Ky. Oct. 18, 2023); *United States v. Silvers*, 671 F. 3d 755, 769 (W.D. Ky. 2023) (noting that the Second Amendment "does not guarantee gun possession for persons demonstrated to be dangerous").

The Court acknowledges the non-binding decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), which Atkins has cited in support of his motion. There, the defendant asserted an as-applied challenge to the constitutionality of his conviction under section 922(g)(1) following his California convictions for vandalism, being a felon in possession of a firearm, possession of a controlled substance, and evading a peace officer. *Id.* at 662-63. The Ninth Circuit concluded that the government had not identified sufficiently analogous historical laws to justify "permanently disarming all non-violent felons today." *Id.* at 683. Although the court's lengthy opinion took a hard look at historical laws relating to firearms regulation, it "pick[ed] off the Government's historical sources one by one, viewing any basis for distinction as fatal." *See Rahimi*, 2024 WL 3074728, at *12 (Sotomayor, J., concurring). The Supreme Court has since stressed that a "dead ringer" is not required. Instead, "if laws at

the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* at *6.

The undersigned also notes the non-binding decision in *United States v. Hostettler*, 2024 WL 1548982 (N.D. Ohio 2024). Hostettler was charged with being a felon in possession of a firearm after having been convicted of five prior felony offenses. They include possession of a controlled substance in 2005; forgery and receiving stolen property in 2008; carrying a concealed weapon in 2012; aggravated possession of drugs in 2017; and being a felon in possession of a firearm in violation of section 922(g)(1) in 2019. Hostettler was charged again in 2023 with being a felon in possession of a firearm under section 922(g)(1), with his 2019 felon-in-possession conviction being listed in the indictment as the predicate felony offense.

Hostettler moved to dismiss the indictment, arguing that section 922(g)(1) is unconstitutional on its face and as applied to him. In evaluating Hostettler's as-applied challenge under *Bruen*, the court cited the purported "dearth of historical evidence supporting permanent felon disarmament" and looked to the predicate offense for the defendant's first felon-in-possession conviction, the 2005 controlled substance offense, which by then was nearly two decades old. *Id.* at *4. The court opined that "not all drug felonies are inherently dangerous for the purposes of disarmament under section 922(g)(1)." *Id.* at *5. And the United States had not argued "that [Hostettler's] 2005 drug felony is distinctly similar to historical analogues that disarmed individuals based on dangerousness." *Id.* The court noted that, upon the record before it, there was nothing to suggest that the defendant's conviction was "anything other than a non-violent drug offense." *Id.* at *5. Based on its observations and, because the government did not meet its burden to demonstrate that section 922(g)(1) was constitutional

as applied to the defendant, it granted Hostettler's motion to dismiss the felon-in-possession charge.

While the undersigned is not necessarily persuaded by the reasoning in *Hostettler*, the facts are significantly distinguishable. The government has established that Atkins' prior controlled substance felonies are serious and not remote in time. [*See* Record Nos. 27-1; 27-2; 27-3; 27-4; 27-5—indicating that convictions were in 2000, 2001, 2009, 2010, and 2015.] Further, the government has met its burden by showing, through identification of historical laws, that disarming Atkins under the circumstances alleged is consistent with the Nation's historical tradition of firearm regulation.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion to dismiss Count 1 of the indictment [Record No. 20] is **DENIED**.

Dated: July 5, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky